UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CIV-61411-RAR

**VERONICA APPLEBY,** *et al.*,

    Plaintiffs,

v.

**KNAUF GIPS KG,** *et al.*,

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s (the "Knauf Defendants") Motion to Dismiss for Failure to State Claim ("Motion"), [ECF No. 40], filed on August 23, 2022.[1] Having considered Defendants' Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 40], is **GRANTED IN PART AND DENIED IN PART** for the reasons stated herein.

### BACKGROUND

**I. Procedural History Related to Chinese-Manufactured Drywall**

This case arrived before the Court following a long history of litigation related to Chinese-manufactured drywall.[2] From approximately 2004 to 2006, a surge in housing demand

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Opp'n to Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s Mot. to Dismiss for Failure to State a Claim ("Response"), [ECF No. 42]; Defs.' Reply to Pls.' Opp'n to Mot. to Dismiss for Failure to State a Claim, [ECF No. 43].

[2] Defendants ask the Court to take judicial notice of rulings made by the Eastern District of Louisiana ("MDL Court") in *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 09-2047. *See* Mot. at 2 n.1. Plaintiffs do not oppose this request, but the Court cites these decisions sparingly and only cites materials filed on the Court's docket.

in Florida, caused by rebuilding efforts following Hurricanes Rita and Katrina, created a shortage of housing materials. Suggestion of Remand, Op. and Order, [ECF No. 18-1], at 1. As a result, certain building materials, including drywall, were imported into the United States from China. *See id.* This imported drywall "was largely manufactured by two groups," one of which was Defendants, who are collectively known as the "Knauf Entities." *Id.* at 2. The Knauf Entities are "international manufacturers of building products, including drywall," and Defendant Knauf New Building System (Tianjin) Co. Ltd., formerly operating under the name Knauf Plasterboard (Tianjin) Co., Ltd., advertised and sold the drywall in the United States. *Id.*

After this drywall was installed into homes, many homeowners complained of damage to their property and physical ailments purportedly caused by the drywall. *See id.* at 1–2. To consolidate the large amount of litigation that followed, the Judicial Panel on Multidistrict Litigation formed MDL 09-2047 on June 15, 2009. *Id.* at 2. The MDL Court eventually presided over a bellwether trial and found in favor of the plaintiff family in that case. *Id.* Following this trial, the Knauf Entities entered into a global class settlement, which Plaintiffs did not participate in. *Id.* at 2–3.

Plaintiffs then filed their Complaint, [ECF No. 1], on May 4, 2021. *See generally* Compl. This matter was subsequently transferred to the MDL Court, Conditional Transfer Order, [ECF No. 16], and the MDL Court remanded this matter on July 28, 2022. Conditional Remand Order, [ECF No. 18].

**II. Factual Background**

Turning to the facts of this action, the Court looks to Plaintiffs' Complaint, the allegations of which are taken as true for purposes of adjudicating the Motion. Plaintiffs own homes containing the Chinese-manufactured drywall produced and sold by the Knauf Defendants. Compl. at 1. Defendants' drywall emitted "sulfur compounds" that damaged property belonging

to each Plaintiff. Compl. ¶¶ 26–30. At some point in 2006, Defendants learned their drywall was causing this damage in homes, but they did not remediate the issue or warn consumers about the possible risks to their property. *See* Compl. ¶¶ 36–39, 114, 145. Instead, Defendants allegedly took steps to ensure their drywall would continue to be distributed throughout the United States, including entering into indemnification agreements with distributors and continuing to advertise the drywall without disclosing information about the damage it might cause. Compl. ¶¶ 40, 47, 114–15, 134–36, 145.

Based on these allegations, Plaintiffs bring twelve claims against the Knauf Defendants: Negligence (Count I); Negligence Per Se (Count II); Strict Liability (Count III); Breach of Express and/or Implied Warranty (Count IV); Private Nuisance (Count V); Negligent Discharge of a Corrosive Substance (Count VI); Unjust Enrichment (Count VII); Violation of Consumer Protectional Acts (Count VIII); Fraudulent Misrepresentation (Count IX); Negligent Misrepresentation (Count X); Fraudulent Concealment (Count XI); and Fraud (Count XII). Compl. ¶¶ 48–149.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). Although the court is required to accept all allegations contained in the complaint as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

### I. Statute of Repose

The Knauf Defendants first argue that all of Plaintiffs' claims are time-barred by either of two statutes of repose. Mot. at 5–9. The Court finds dismissal on these grounds inappropriate.

As a preliminary matter, the Court must distinguish between a statute of limitations and a statute of repose. A statute of limitations puts an outer limit on when a plaintiff may bring suit after the plaintiff's cause of action accrues. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1247 (11th Cir. 2016). Statutes of repose also put an outer limit on when a plaintiff may bring a cause of action, but the event that triggers the running of a statute of repose is the "last culpable act or omission of the defendant," not the occurrence or discovery of an injury caused by such act or omission. *Id.* (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)). Thus, a statute of repose generally acts as an "absolute bar on a defendant's temporal liability" once it has lapsed. *Dusek*, 832 F.3d at 1247 (alteration accepted) (quoting *Waldburger*, 573 U.S. at 8). The rigidity of statutes of repose is compounded by a crucial distinction between statutes of repose and statutes of limitations: while statutes of limitations might be subject to equitable tolling, statutes of repose are not. *Id.*

A bar from liability due to the running of a statute of repose, like a defense based on a statute of limitations, is an affirmative defense. *See, e.g.*, *Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.*, 454 F. App'x 792, 794 (11th Cir. 2011) (noting the defendant pled the statute of repose as an affirmative defense). A complaint may be dismissed based on an affirmative defense for failure to state a claim "only when the affirmative defense appears on the face of the complaint." *Wells v. Brown*, 58 F.4th 1347, 1350 (11th Cir. 2023); *see also CDG Int'l Corp. v. Q Cap. Strategies, LLC*, No. 17-23902, 2018 WL 278891, at *6 (S.D. Fla. Jan. 3, 2018) (stating that dismissal on the basis of a statute of limitations defense is only proper when "the factual allegations

in the complaint clearly show that the claim is untimely" (quoting *St. John's Univ, N.Y. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010)).

The Knauf Defendants proffer two statutes of repose they argue might govern this action. First, they direct the Court to section 95.11(3)(c) of the Florida Statutes, which governs improvements to real property. That statute imposes a ten-year repose period on the commencement of actions "founded on the design, planning, or construction of an improvement to real property." Fla. Stat. § 95.11(3)(c). This ten-year period begins running at the later of:

> [T]he date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion of the contract or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer.

Fla. Stat. § 95.11(3)(c). Plaintiffs instituted this action on May 4, 2021, so if this statute of repose is applicable, their action is only timely if the triggering event occurred on or after May 4, 2011.

Alternatively, Defendants argue Florida's statute of repose governing products liability bars Plaintiffs' claims. This statute of repose provides that plaintiffs may not bring actions for products liability "to recover for harm allegedly caused by a product with an expected useful life of 10 years or less" if the harm was due to exposure or use "more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product." Fla. Stat. § 95.031(2)(b). Except for some exceptions not relevant here, all products are conclusively presumed to have an expected useful life of 10 years or less. *Id.* However, there are two statutory exceptions to this repose period. First, the repose period does not apply if the plaintiff was "exposed to or used the product within the repose period" but the plaintiff's injury did not manifest until after the repose period expired. *Id.* § 95.031(c). Second, the repose period is tolled "for any

period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." *Id.* § 95.031(d). Assuming no exception applies, Plaintiffs' claims are timely if the triggering event occurred on or after May 4, 2009, under this statute of repose.

The Knauf Defendants argue that because the MDL Court found Chinese-manufactured drywall was imported into the United States from approximately 2005 to 2008, it is improbable the triggering events relevant to Plaintiffs' claims occurred after either date stated above. Mot. at 5–9. The Court does not need to decide which statute of repose is applicable, because neither of these affirmative defenses "appears on the face of the complaint." *Wells*, 58 F.4th at 1350. Nowhere in the Complaint do Plaintiffs indicate dates relevant to the triggering events, and thus the Court cannot determine, based solely on Plaintiffs' allegations, that Plaintiffs' causes of action are time-barred. *See generally* Compl. While it might be true the drywall at issue was primarily imported between 2005 and 2008, this fact has little to do with either of the cited statutes of repose. None of the triggering events listed in the statute of repose governing improvements to real property relate to when the materials arrived in the United States. Fla. Stat. § 95.11(3)(c).

The same is generally true of the statute of repose for products liability, and by Defendants' own calculation, this statute only bars suit if the triggering event was before May 4, 2009. Given this is only about five months after "2005 to 2008," which is itself an approximation, the Court disagrees the Complaint must be dismissed because it is implausible Plaintiffs' claims are timely. While a statute of repose might ultimately bar Plaintiffs' claims, the Court will not dismiss the Complaint on this ground.

## II. Rule 9 Particularity

Defendants argue Plaintiffs have failed to satisfy Federal Rule of Civil Procedure 9(b)'s pleading requirements in alleging Fraudulent Misrepresentation (Count IX), Fraudulent Concealment (Count XI), and Fraud (Count XII). Mot. at 11–13. Plaintiffs only respond to this argument as it relates to their fraud claim. Resp. at 4. Plaintiffs' failure to respond to Defendants' arguments as to Counts IX and XI is a concession to their dismissal, because "a 'party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.'" *See, e.g.*, *Rasof v. Lyubovny*, No. 22-60930, 2022 WL 18464860, at *2 (S.D. Fla. Nov. 1, 2022) (quoting *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014)).

Federal Rule of Civil Procedure 9(b) mandates that when a complaint contains allegations of fraud or mistake the plaintiff "must state with particularity the circumstances constituting fraud or mistake." *See* FED. R. CIV. P. 9(b). The particularity requirement ensures the complaint "alert[s] defendants to the precise misconduct with which they are accused." *See Perkins v. Nat'l LGBTQ Task Force, Inc.*, 580 F. Supp. 3d 1236, 1239 (S.D. Fla. 2021) (citation omitted). Rule 9(b) does not dispose of notice pleading, but Plaintiffs must allege "the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). A plaintiff can meet this requirement by alleging sufficient information regarding (1) the allegedly fraudulent statements or omissions, as well as the documents or oral representations where they were made; (2) when and where these statements or omissions were made and who made them; (3) the content of these statements and how the plaintiff was misled by them; and (4) the benefit the defendant gained from making the fraudulent statements or omissions. *See FindWhat Invs. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Here, Plaintiffs certainly plead some specifics in Count XII. For example, Plaintiffs identify two Knauf employees—Mike Norris and Isabel Knauf—who in some form internally

discussed complaints Defendants received about the drywall. Compl. ¶ 145. Plaintiffs also allege that after Defendants confirmed the drywall was defective, they entered into an indemnification agreement with one of their distributors in an effort "to encourage continuing sales of the defective product without any limitation or disclosure regarding the defective nature of their product." Compl. ¶ 145. This indemnification agreement allegedly provided that the parties would keep the agreement confidential. Compl. ¶ 145. Plaintiffs have sufficiently pleaded the "what" of the allegedly fraudulent statements: they identify several pieces of information they believe Defendants needed to disclose, such as the "drywall was not adequately tested" and "that testing had revealed unreasonably high risk of damage to homes and personal property." Compl. ¶ 145.

However, Plaintiffs' allegations as to the "when" and "where" of the fraudulent statements or omissions are too conclusory. Plaintiffs simply allege that "each and every advertisement and marketing channel" omits information about the risks posed by the drywall and overstates its quality. *See* Compl. ¶ 145. The Complaint contains no temporal limitation on these advertisements or marketing channels other than they must have been made after some unspecified time in 2006, when Defendants first learned about the true nature of the drywall. *See generally* Compl. Without further allegations regarding these statements—such as their nature or general content and a reasonable timeframe during which they were made—the Complaint falls short of putting Defendants on notice of their "precise misconduct." *Perkins*, 580 F. Supp. 3d at 1239 (citation omitted); *see also Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009) ("Plaintiffs are not expected to specify the exact time and the particular place of each factual omission or misrepresentation, but they must provide a sufficiently narrow time frame from which defendants could derive notice as to when the misrepresentations were made." (citation omitted)). Plaintiffs must therefore replead Count XII.

Though the Court construes Plaintiffs' failure to respond to Defendants' arguments relating to Counts IX and XI as a concession to the dismissal of those claims, a review of these counts shows they share the same deficiency. Count IX alleges that Defendants distributed "marketing material" and "information about [Defendants'] product" that overstated the quality of the drywall and did not contain information that Defendants were purportedly required to disclose. Compl. ¶¶ 113–17. Count XI similarly claims that Defendants "provided false information" to "Plaintiffs, Plaintiff's builders, distributors, importers, and the public." Compl. ¶ 133. Plaintiffs also allege Defendants should have disclosed information about the known risks in "advertising, marketing materials, sales personnel, [and] publications." Compl. ¶ 134. While Rule 9(b)'s requirements are not exacting, Plaintiffs must include additional information about these allegedly fraudulent materials to put Defendants on notice of the claims against them. Plaintiffs must therefore replead these claims as well.

### III. Discovery Rule Applicability

In a section of the Complaint simply labeled "Discovery Rule," Plaintiffs blanketly allege their causes of action "did not accrue until Plaintiffs discovered" the defective nature of the drywall. *See* Compl. ¶ 45. The Knauf Defendants argue that Plaintiffs must amend this portion of their Complaint to include more factual information about the applicability of a discovery rule. *See* Mot. at 8–9. Plaintiffs do not appear to respond to this argument.

A plaintiff does not need to preempt a defendant's affirmative defenses. *See, e.g.*, *Merino v. Ethicon Inc.*, 536 F. Supp. 3d 1271, 1288 (S.D. Fla. 2021) (dismissing a distinct cause of action for "[d]iscovery [r]ule, [t]olling and [f]raudulent [c]oncealment" because these were simply "pre-emptive attacks on Defendants' potential affirmative defenses"). However, a plaintiff purporting to rely on equitable tolling based on a discovery rule must plead sufficient facts to demonstrate when the discovery occurred and that the plaintiff was diligent in discovering the

claim. *See Varner v. Domestic Corp.*, No. 16-22482, 2017 WL 3730618, at *9 (S.D. Fla. Feb. 7, 2017); *Eddit v. Bank of Am.*, No. 8:17–cv–1534–T–26TBM, 2018 WL 573406, at *4 (M.D. Fla. Jan. 26, 2018).

It is unclear from the Complaint whether this section is meant to preemptively invoke an argument based on a statute of limitations, statute of repose (insofar as Florida law provides for statutory tolling of a repose period), or both. No matter which tolling rule Plaintiffs attempt to invoke, they do not plead any facts relating to when they discovered the defect. *See generally* Compl. ¶ 45–47. Therefore, if Plaintiffs intend to rely on a discovery rule, they must include factual allegations relating to when they discovered their claims and their diligence. Though this is not an independent claim, the Court will require Plaintiffs to replead this section of the Complaint.

## IV. Unjust Enrichment

Defendants move to dismiss Plaintiffs' claims for Unjust Enrichment (Count VII), arguing they are duplicative of Plaintiffs' other claims. Mot. at 13. Plaintiffs once again did not respond to this argument and have thus conceded these claims warrant dismissal. *Jones*, 564 F. App'x at 434. Nonetheless, Defendants are correct these claims should be dismissed. Unjust enrichment is an equitable remedy that may be plead in the alternative to legal causes of action, but when a claim for unjust enrichment is based purely on the "same factual predicates" as a legal theory "it is not a true alternative theory of relief." *See, e.g.*, *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (citing *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13–61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013)). Count VII of the Complaint simply incorporates by reference the allegations of preceding counts and alleges it would be unjust for Defendants to retain any benefit they received. Compl. ¶¶ 104–107. Thus, this claim is not sufficiently distinct from Plaintiffs' legal causes of action and must be dismissed as duplicative.

### V. Breach of Express or Implied Warranties

Defendants argue Plaintiffs' claims for Breach of Express and/or Implied Warranties (Count IV) must be dismissed because Plaintiffs were not in privity with the Knauf Defendants, and alternatively, did not provide the Knauf Defendants with notice as required by Florida law. Mot. at 9–10. In their Response, Plaintiffs concede that they were not in privity with the Knauf Defendants and these claims should be dismissed. Resp. at 4. Therefore, Plaintiffs' amended complaint must omit these claims.

### CONCLUSION

For the foregoing reasons, Defendants' Motion, [ECF No. 40], is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Counts IX, XI, and XII, and the section of the Complaint relating to the "Discovery Rule" are *dismissed without prejudice with leave to amend*.

2. Counts IV and VII are *dismissed with prejudice*.

3. Plaintiffs must file an amended complaint on or before **April 8, 2023**.

4. The parties shall file a Joint Scheduling Report within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 8th day of March, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**